IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
July 26, 2022 Session

**STATE OF TENNESSEE v. DAVID ALLEN DONTON, JR.**

**Appeal from the Criminal Court for Knox County**
**No. 117041   Kyle A. Hixson, Judge**

_____

**No. E2021-00721-CCA-R3-CD**
_____

Defendant, David Allen Donton, Jr., was indicted by the Knox County Grand Jury for one count of observation without consent, involving an eight-year-old female victim. Defendant pleaded guilty as charged and agreed to serve one year as a Range I offender with the manner of service to be determined by the trial court after a sentencing hearing. Following a hearing, the trial court denied Defendant's request for probation and imposed a sentence of confinement. Defendant filed an untimely notice of appeal, and this Court granted his motion to waive the timely filing. Defendant contends that the trial court departed from the principles and purposes of sentencing in several ways. After review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Eric Lutton, District Public Defender, and Jonathan Harwell, Assistant District Public Defender (on appeal); Chris Irwin (at trial), Knoxville, Tennessee, for the appellant, David Allen Donton, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen, District Attorney General; and Rachel Lambert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Guilty Plea*

At the guilty plea submission hearing, the State announced that Defendant had agreed to enter a guilty plea to the indicted offense of observation without consent and receive a sentence of one year with the manner of service to be determined at a sentencing hearing. The State gave the following recitation of facts as a basis for Defendant's guilty plea:

> [O]n August 23, 2019, Detective James Hurst with the Knox County Sheriff's Office . . . respond[ed] to 1350 Emory Road at the Dollar General Market. [W]hen he arrived there, he identified [the] victim. . . .
>
> She was an eight-year-old girl who stated that while she was in the ladies' room back stall at the Dollar General Market, she noticed what appeared to be a man's shoe under the stall next to her. The victim stated that she heard the male moving around and noticed him looking down and smiling at her over the side stall door.
>
> The victim stated that she got dressed, and she was very scared, and waited a minute and ran out the door, when she came in contact with the manager of the store, whose name is Jacob Hall.
>
> Furthermore, Jacob Hall would testify that he noticed the victim was upset and scared, and he asked her what was wrong. And Mr. Hall would testify that the victim told him that there was a man in the ladies' bathroom, and that he then told [the victim] to go to her mother while he checked the ladies['] room. And he stayed – and he would testify that he found the suspect, [D]efendant, in the ladies' room stall. He stated that he had to call for the suspect to come out several times before he finally exited the ladies' room.
>
> [D]efendant stated that he was in the ladies' room, and he did look over the stall at the victim. During the interview of [Defendant] he stated he was in the store for a while and made several trips to the water fountain located between the two bathrooms. He also stated that before the incident he had used the restroom in the men's restroom and did not know that there was a men's restroom and did not know that there was a men's and a women's restroom, that he had willfully gone into the women's restroom on the occasion on which he saw [the victim].
>
> . . . .

Furthermore, Detective Hurst made contact with . . . [Defendant]'s stepfather. He stated that he had been trying to get [Defendant] some help because of an addiction to pornography, and that this is not the first time [Defendant] ha[d] done something like this.

After reviewing Defendant's rights, the trial court accepted the guilty plea and noted Defendant's intent to file an application for probation.

### *Sentencing Hearing*

A presentence investigation report was prepared that indicated Defendant was 27 years old, that he had graduated from high school and attended some community college, and that he had no criminal history. Defendant reported that he had a good childhood, that his parents divorced when he was young, and that he had never had a relationship with his father. Defendant lived with his mother, stepfather, and brother, and he was employed at the time the report was prepared. Defendant stated that his mental and physical health were good but that he suffered from ADHD as a child and received treatment at Cherokee Health. Defendant's Strong-R assessment indicated that Defendant had a moderate risk to reoffend.

The presentence investigation report contained a victim impact statement by the victim's mother, which stated that the victim was afraid to sleep alone, refused to use public restrooms without someone beside her, and was afraid to use family members' bathrooms. She stated that she had to accompany the victim to the restroom whenever they left the family home and that someone had to check every restroom stall before the victim felt safe.

Defense counsel introduced a report from Dr. Michael Adler, who performed a court-ordered psychosexual evaluation, which the trial court admitted as a sealed exhibit. Dr. Adler's report identified several risk factors associated with a moderate risk level, including Defendant's significant interpersonal social skill deficits and fears of intimacy, Defendant's sexual offense history, and Defendant's lack of history of adult intimate relationships. The report stated that Defendant was "cooperative and generally open about his sexual deviancy." Defendant admitted to having entered women's restrooms hundreds of times, but he stated that he had "never been caught looking over a stall until this incident." Defendant also admitted that he was "obsessed" with watching women engaged in the process of defecating but denied becoming aroused by looking over the stall. Defendant stated that he hated his actions but was unable to control his urges.

Defense counsel also introduced a "proof of therapy" checklist, which showed that Defendant attended seven out-patient therapy sessions between January 27, 2021, and May 10, 2021. Neither the State nor Defendant presented any witnesses.

- 3 -

The State argued that incarceration was necessary to protect the community because Defendant had a moderate risk to reoffend. Defense counsel argued that Defendant was an "excellent candidate for probation" in that Defendant had no criminal history, no history of drug use, stable housing and employment, and Defendant had acknowledged the harm of his actions and received psychological treatment. Defense counsel argued, "it [could] harm the community by ending the progress that [Defendant had] made. . . ."

At the conclusion of the hearing, the trial court stated that it had considered the presentence investigation report, the arguments of counsel, the nature of the offense, and the results of the validated risk and needs assessment. The court noted that the presentence report indicated that Defendant was "a moderate risk with moderate to high needs in the areas of education, residential, and employment." The court also noted that the psychosexual report indicated that Defendant had a moderate risk of reoffending but that the report recommended outpatient treatment.

The trial court also considered mitigating and enhancement factors. In mitigation, the court found that Defendant's conduct neither caused nor threatened serious bodily injury; that Defendant had no prior criminal convictions; and that Defendant had a difficult upbringing in that his parents were divorced and his father was absent. The court emphasized, however, that although Defendant had no prior convictions, he had a history of criminal behavior because he admitted that "he was engaged in the behavior of going into women's restrooms hundreds of times in his life." The court questioned whether Defendant's statement that "this was the first time that he actually looked over the stall" was "self-serving[.]" The court found that Defendant had "a troubling, long-term and continuous trend of predatory sexual behavior" and placed "great weight" on enhancement factor (1). *See* T.C.A. § 40-35-114. The court also applied enhancement factor (7), finding that the offense was committed to gratify Defendant's desire for pleasure or excitement. *See id*.

The trial court concluded that confinement was necessary to protect society based on Defendant's "long history of criminal conduct." The court also found that confinement was necessary to avoid depreciating the seriousness of the offense, stating:

> [I]t goes without saying. This is a very serious offense. I think the facts that were set forth in the addendum to the PSI, the victim-impact statement just clearly state[s] in very vivid terms how serious this offense is. And the long-term effects that it will have on this victim and her family. The psychological effects of this are devastating. And I think there has to be an understanding that when someone engages in this type of conduct that there will be serious, punitive consequences.

The court noted that Defendant had potential to resolve his issues through therapy but observed that Defendant had "deep-seated issues" that the court could not be assured Defendant had brought under control such that the public would be safe if Defendant were sentenced to probation. The court found a need for individual deterrence for Defendant so that Defendant "underst[ood] and appreciate[d] the seriousness of what he's done." The court denied Defendant's application for probation and ordered him to serve the one-year sentence incarcerated.

## *Analysis*

Defendant contends that the trial court erred in denying probation. The State responds that the trial court properly denied probation.

When a trial court denies probation or any other alternative sentence to an eligible defendant and states on the record reasons that are in accordance with the purposes and principles of sentencing, the court's decision is reviewed under an abuse of discretion standard, accompanied by a presumption of reasonableness. *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012); *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). If the trial court fails to articulate the reasons for denying an alternative sentence, the "abuse of discretion standard with a presumption of reasonableness" does not apply on appeal and an appellate court can either (1) conduct a de novo review to determine whether there is an adequate basis for denying probation; or (2) remand for the trial court to consider the requisite factors in determining whether to grant probation. *See State v. Pollard*, 432 S.W.3d 851, 864 (Tenn. 2013).

Before imposing a sentence, the trial court is statutorily required to consider the following factors:

(1) The evidence, if any, received at the trial and the sentencing hearing;
(2) The presentence report;
(3) The principles of sentencing and arguments as to sentencing alternatives;
(4) The nature and characteristics of the criminal conduct involved;
(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee;
(7) Any statement the defendant wishes to make on the defendant's own behalf about sentencing; and
(8) The result of the validated risk and needs assessment conducted by the department and contained in the presentence report.

T.C.A. § 40-35-210(b) (2020). The trial court must state on the record the statutory factors it considered and the reasons for the ordered sentence. T.C.A. § 40-35-210(e) (2020); *Bise*, 380 S.W.3d at 705. "Mere inadequacy in the articulation of the reasons for imposing a particular sentence, however, should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. A trial court's sentence "should be upheld so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id*. at 709-10.

"A defendant shall be eligible for probation under this chapter if the sentence actually imposed upon the defendant is ten (10) years or less," with some exceptions. *See* T.C.A. § 40-35-303(a) (2020). In determining whether confinement is appropriate, the trial court should consider the following principles:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

T.C.A. § 40-35-103(1)(A)-(C) (2020). Additionally, the sentence imposed should be (1) "no greater than that deserved for the offense committed[,]" and (2) "the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" T.C.A. § 40-35-103(2), (4) (2020). The trial court may also consider the *Electroplating* factors in determining whether to impose a sentence of probation. *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citing *State v. Electroplating, Inc.*, 990 S.W.2d 211, 229 (Tenn. Crim. App. 1998)). When determining whether a defendant is eligible for probation, the trial court can consider: (1) the defendant's amenability to correction; (2) the circumstances of the offense; (3) the defendant's criminal record; (4) the defendant's social history; (5) the defendant's physical and mental health; and (6) the deterrence value to the defendant and others. *Electroplating*, 990 S.W.2d at 229. To deny probation solely based upon the seriousness of the offense, however, the trial court must find that the circumstances of the offense, "as committed, must be especially violent, horrifying, shocking, reprehensible, offensive, or otherwise of an excessive or exaggerated degree, and the nature of the offense must outweigh all factors favoring probation." *State v. Hartley*, 818 S.W.2d 370, 374-75 (Tenn. Crim. App. 1991) (internal quotations and citations omitted).

Defendant complains that the trial court erred by failing to consider him "a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tennessee Code Annotated section 40-35-102(6)(A) only requires the trial court to

- 6 -

"consider" whether or not the defendant is a favorable candidate, but the court "is not bound by the advisory sentencing guideline in this subdivision (6)." T.C.A.§ 40-35-102(6)(D). Here, the trial court did not expressly state at the sentencing hearing that Defendant was a "favorable candidate" for probation. Nevertheless, it is within a trial court's discretion to impose a sentence of incarceration on a favorable candidate if the defendant fails to prove he or she is a suitable candidate for an alternative sentence. *See State v. James Demoss*, No. M2019-01583-CCA-R3-CD, 2020 WL 4199987, at *8 (Tenn. Crim. App. July 22, 2020) (citing *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008)), *perm. app. denied* (Tenn. Nov. 12, 2020). It is Defendant's burden to establish his suitability for full probation, even if he is considered a favorable candidate for alternative sentencing. *See State v. Boggs*, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996) (citing T.C.A. § 40-35-303(b)).

In denying probation, the trial court considered Defendant's lack of a criminal record, his social history, and his physical and mental history as set forth in the presentence report. The court also considered Defendant's potential for rehabilitation or treatment, finding that he had the potential to make progress in out-patient therapy, but the court noted that Defendant's issues were "deep-seated," that he had an above-average risk of recidivism, and that he was only able to express the harm that his actions inflicted on the victim in general terms.

Defendant complains that the trial court misapplied enhancement factor (7), that the offense involved a victim and was committed to gratify Defendant's desire for pleasure or excitement. T.C.A. § 40-35-114(7). A court may not apply a statutory enhancement factor that is an essential element of the offense. *Id*.; *see State v. Imfeld*, 70 S.W.3d 698, 704 (Tenn. 2002). The offense of observation without consent contains as an element that the observation was "for the purpose of sexual arousal or gratification of the defendant." T.C.A. § 39-13-607(a)(2). However, if a trial court misapplies an enhancement or mitigating factor, said error will not remove the presumption of reasonableness from its sentencing determination. *Bise*, 380 S.W.3d at 709.

Furthermore, when presented with an agreed upon sentence, the trial court's application of enhancing or mitigating sentencing factor language, T.C.A. §§ 40-35-113 and 114, has little legal significance on the question of alternative sentencing. What is significant to the question of alternative sentencing is a defendant meeting his or her burden to establish their suitability for probation, even if considered a favorable candidate for alternative sentencing, and the trial court's stated sentencing considerations, T.C.A. § 40-35-103, for granting or denying alternative sentencing. *Carter*, 254 S.W.3d at 347. Defendant is not entitled to relief simply because the trial court erroneously used language from T.C.A. § 40-35-114(7) as a consideration to deny alternative sentencing.

Next, Defendant contends that the trial court improperly relied on the seriousness of the offense and the need for deterrence in its decision to deny probation. Defendant asserts that there was nothing egregious or unique about the circumstances of the offense in this case to distinguish it from any other observation without consent offense and that "[a]ll such offenses are serious ones with real consequences." In determining that incarceration was necessary to avoid depreciating the seriousness of the offense, the trial court simply stated, "[I]t goes without saying. This is a very serious offense." The trial court emphasized the "long-term effects" Defendant's actions had on the victim and her family and noted, "[t]he psychological effects of this are devastating." Regarding deterrence, the trial court found that "there needs to be a period of incarceration . . . [s]o [Defendant] understands and appreciates the seriousness of what he's done." The court noted that Dr. Adler stated in his report that Defendant had minimalized the harm caused to the victim. The court concluded, "I think as [Defendant] goes forward[,] he needs to understand that he has to get it under control because there will be punitive consequences going forward."

The trial court failed to articulate the specific facts upon which it determined that incarceration was necessary to provide an effective deterrent. Instead the trial court stated generally, "I think there has to be an understanding that when someone engages in this type of conduct that there will be serious, punitive consequences." The statements of the trial court espousing his personal belief about the need for deterrence are not evidence, and no proof was introduced at the sentencing hearing related to deterrence. *See State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000) (emphasizing that "the record must contain some proof of the need for deterrence before a defendant, who is otherwise eligible for probation or other alternative sentence, may be incarcerated"). Likewise, the trial court failed to articulate the specific facts upon which it based its determination that incarceration was necessary to avoid depreciating the severity of the offense. Accordingly, we must examine the record de novo to determine if there is any substantial evidence in the record to support the trial court's determination. *See State v. Leavy L. Johnson*, No. M2020-01443-CCA-R3-CD, 2021 WL 5984939, at *12-13 (Tenn. Crim. App. Dec. 17, 2021) (citing *State v. Tammy Marie Harbison*, No. M2015-01059-CCA-R3-CD, 2016 WL 613907, at *3 (Tenn. Crim. App. Feb. 12, 2016), *no perm. app. filed* (conducting a de novo review because, when discussing whether to deny probation, "the [trial] court stated simply, 'the court finds that [a probationary sentence] would [depreciate the severity of the offense].'"), *perm. app. denied* (Tenn. Apr. 13, 2022).

However, the seriousness of the offense was not the only factor relied upon by the trial court in denying probation. The trial court also placed great significance on Defendant's history of criminal behavior based on Defendant's admission that he had been in women's restrooms numerous other times. Defendant argues that the trial court's conclusion that Defendant had previously engaged in criminal behavior was speculative.

The trial court reasoned, "I don't know how you go into women's restrooms hundreds of times and this is the actual only time that he looked over the stall." Although Defendant had no prior criminal convictions, he admitted that he was "obsessed" with watching women defecate, that he had entered women's restrooms hundreds of times before, and he claimed that he was unable to control his urges despite hating his actions. It was reasonable for the trial court to consider Defendant's past deviant behavior. Moreover, Defendant did not state that he had never looked over a stall before; rather, he stated that it was the first time he had been "caught" looking over a stall. Defendant's past conduct and his moderate risk level to reoffend reflect poorly on his amenability to correction.

Considering the relevant factors, we conclude that there is substantial evidence in the record to support the trial court's determination denying Defendant full probation.

CONCLUSION

Based on the foregoing analysis, we affirm the judgment of the trial court.

_____
TIMOTHY L. EASTER, JUDGE